*Marginal note:*
FRANKFORT BRIDGE Co.
*vs.*
CITY OF FRANKFORT.

---

Frankfort Bridge Company *vs.* City of Frankfort.

Case 9.

*Marginal note:*
18m 41
98 191
18m 41
10J 33
18bm 41
e118 598

APPEAL FROM FRANKLIN CIRCUIT.

1. There is nothing in the charter of the Frankfort Bridge Company to prevent the company from contracting to permit the connecting of water pipes to the bridge, to convey water from one side to the other, nor does such permission interfere with the objects of the act of incorporation.

FRANKFORT
BRIDGE CO.
*vs.*
CITY OF FRANK-
FORT.

2. The Bridge Company had the right to prohibit the city from attaching water pipes to their bridge, and if permitted to do so, under an agreement either express or implied, to pay for the use of the bridge, there is a liability arising out of the contract, and not out of any assumed right to charge tolls.

3. Corporations may be bound, by express promises made by their authorized agents, or promises implied from their acts, and the acts of their agents. 7 *Dana*, 28; 1 *B. Monroe*, 14; 5 *Ib.* 129; 2 *Kent's Com.* 233; *Angell and Aimes on Corp.* 238—241.

[The facts of the case appear in the opinion of the court.—REP.]

*T. N. Lindsey,* for appellant—

The corporation of the city of Frankfort contracted with the Bridge Company to convey water through pipes attached to the bridge. It is insisted that the city council had power to make such contract, and that the bridge company had also power, and if made, even by parol, by the council or by its authorized agent, it is binding on the city. *Angell and Aimes, on Corp.*, 219.

The city did make such contract; it appointed an agent to ascertain the terms upon which the bridge company would permit the water pipes to be placed upon the bridge for the conveyance of the water; he reported that the bridge company, for the use of the bridge in that way, would charge $50 per year; the pipes were then attached to the bridge, and the water conveyed. From these acts of the city, a contract to pay the $50 is undoubtedly to be implied. 5 *Monroe,* 129; 1 *Dana,* 87; *Angell and Aimes, on Corp.*, 129, 139, 166, 169, 218.

That the city regarded what had taken place as a contract is evinced by the fact proved, that it imposed a tax for the use of the water conveyed across the bridge.

It is not as tolls that the bridge company claim compensation for the use of the bridge, but under their contract granting the use of the bridge. The facility of communication across the river is among the great objects of the bridge, and so far from its

being in opposition to the purposes of the bridge, it is entirely consistent with it.

It is insisted that there is nothing in the charter prohibiting such a contract as that relied on for a recovery in this case, and the circuit court erred in its instructions to the jury, and in refusing a new trial.

*John M. Harlan* for appellees—

The bridge company being a corporation, has only such powers as are expressly granted by its charter, or are necessary for carrying into effect the powers expressly granted. 2 *Kent's Com.*, 350, (8*th ed.*); 2 *Cranch*, 127; 11 *Pet.* 420; 9 *Howard*, 184; *Angell and Aimes on Corp.*, 253.

It must be admitted that the charter gives no express power to convey water from North to South Frankfort, by pipes attached to the bridge. Such a use of the bridge is inconsistent with, and foreign to the purposes for which it was authorised to be erected. The powers which are granted to corporations, in the language of Chancellor Kent, "*must be strictly construed.*" The preamble to the charter, (4 *Litt. Laws*, 137,) declares the object to be to "facilitate the *communication* of a great portion of the *citizens* of this state with *the seat of government*." To effect this, the company was authorised to erect "a good and sufficient bridge, adequate for the passage of *travelers*, *carriages, horses*, and *cattle*." A list of tolls to be charged for the use of the bridge is given. No toll is permitted for water pipes. Such use is not provided for and does not seem to have been contemplated. It could be provided for by an amendment to the charter. It does not facilitate the "communication" of *citizens* with "the seat of government." It may tend to the convenience of the people of South Frankfort, but the convenience of these people cannot invest the company with power to determine the uses of the bridge in matters unauthorised, uncontemplated, and unnecessary for the purposes of its erection.

FRANKFORT
BRIDGE CO.
    vs.
CITY OF FRANK-
    FORT.

In the case of the *Penn., Del. and Md. Steam Nav. Co. vs. Dandridge*, 8 *Gill and Johns.*, 249, that company was incorporated to establish and conduct a "line or lines of steamboats, vessels, and stages and other carriages between Philadelphia and Baltimore for the conveyance of passengers and merchandise and other articles." A contract by such company to use its property for the breaking of ice in the Chesapeake and towing vessels through the track thus broken, from and out of the harbor of Baltimore, such vessels being bound for Virginia, was held invalid, because such an *use of its property* was foreign to the object of its incorporation, and not in pursuance of any express power granted to it. So strict was the court in construing corporate powers, that in an action against the company for a failure to perform the contract, it was permitted to plead a want of power to make the contract. The Supreme Court of Maryland says, that "If the corporation is estopped from denying its powers, the estoppel operates with like effect upon those who contract with them, and the result would be that no matter how limited the design and powers of a corporation may appear in its charter, practically it is a corporation without limitation as to its powers. Such a doctrine at this day is dangerous to the interest of the community, and is at war with the modern decisions upon the subject."

The attempt in this case is virtually to make the city pay *toll* for the passage of water under the bridge. And as no toll is authorised by the charter, none can be collected. *Perrine vs. Ches. and Del. Canal Co.* 9 *Howard*, 184.

It may be contended that the claim of the bridge company is not based upon any right to demand toll, as such, but upon the alleged contract between the parties. But it is, in effect, a contract to pay *toll*— an amendment made by the company and not by the Legislature, to the section of the charter containing the list of charges. A new and high rate of toll is fixed by the company for new uses of the bridge.

Such a demand of toll is not enforcible. Nor will the law enforce a contract which the company had not the power to make, whether that contract was for the payment of a new rate of toll, or for the use of the bridge property in a manner not authorised, and clearly not provided for, or contemplated by the act of incorporation.

FRANKFORT
BRIDGE CO.
*vs.*
CITY OF FRANK-
FORT.

Judge SIMPSON delivered the opinion of the court.                    June 4, 1857.

This action was brought by the Frankfort Bridge Company, against the Mayor and Council of the city of Frankfort, to compel them to pay for the use of the bridge across the Kentucky river, in extending their water pipes and conveying water from the northern to the southern side of the river, within the city limits.

It appeared on the trial, that in the year 1850 a resolution was adopted by the board of councilmen of the city of Frankfort, requesting the bridge company to communicate to the board the terms upon which the defendants might be permitted to attach their water pipes to the bridge, for the purpose of conveying the water from one side of the river to the other, and that in answer to that request they were informed by the president of the bridge company, through one of the members of the board, that they would be permitted to use the bridge for the purpose contemplated, by paying therefor the sum of fifty dollars annually. No action of the board was had on that proposition, nor was it expressly accepted; but the board proceeded to extend the water works of the city into that part of the city that is on the southern side of the river, and made use of the bridge of the company, by attaching the water pipes thereto to enable them to do it.

The circuit court was of the opinion that the action could not be maintained, and instructed the jury to find for the defendants.

Two questions have been discussed in this case.

*First.* Had the plaintiffs any power to make such a contract as they set up and rely upon, or have they

FRANKFORT
BRIDGE CO.
*vs.*
CITY OF FRANK-
FORT.

any right to charge for the use of the bridge in the way it has been used by the defendants?

*Second.* If no express contract be proved, can an implied promise to pay for the use of the bridge legally arise in the case of an corporation, from its corporate acts?

*First.* " In deciding whether a corporation can ' make a particular contract, we are to consider, in ' the first place, whether its charter, or some statute ' binding upon it, forbids or permits it to make such ' a contract; and if the charter, and valid statutory ' law are silent upon the subject, in the second place, ' whether a power to make such a contract may ' not be implied on the part of the corporation, as ' directly or incidentally necessary to enable it to fulfil ' the purpose of its existence, or whether the contract ' is entirely foreign to that purpose." *Angell and Aimes on Corporations, sec.* 256.

These principles are well sustained by numerous decisions. To ascertain their bearing upon the question under consideration, it will be necessary to examine the provisions of the charter by which the plaintiffs were incorporated.

The act of incorporation was passed in January, 1810. (4 *Littell's Laws of Ky.* 137.) By it the corporation, which was to be called the Frankfort Bridge Company, was authorised " to do and suffer all acts, ' matters, and things which a body corporate may ' lawfully do and suffer," and " generally to do and ' execute all and singular such acts, matters, or things ' as to them shall or may appertain." They were authorized, as soon as the bridge was completed, to demand and receive the tolls fixed in the charter, for passing over the bridge. The object of their incorporation evidently was to facilitate a communication across the river, by the construction of a bridge properly adapted to that purpose.

1. There is nothing in the

The contract relied upon by the corporation is neither prohibited by any statutory law, or the provisions of its charter. Is it then forbidden by the

nature and object of the institution, or is it entirely foreign to the purpose of its existence ?

The principal object to be effected by the construction of the bridge, was to facilitate the passage across the river of persons, stock, and vehicles of various description. But it was also designed to be a general channel of communication from one side of the river to the other. To permit it to be used to convey water from one part of the city to the other, is not only not inconsistent with the principle object of its existence or foreign thereto, but is one of the uses to which it might naturally and properly be applied, to enable it to fulfil the whole purpose of its existence. The decision in the case of the *Pennsylvania, &c. Co. ve. Dandridge,* 8 *Gill and Johns.* 248, does not at all militate against this conclusion. There the company had been incorporated for a certain specified purpose, and it made a contract by which it was bound to do certain acts entirely foreign to the purpose for which it was created. Here, on the contrary, the contract related to the use of the bridge, which the company had constructed; and the use of it which was allowed, by the terms of the contract, did not in any manner interfere with its use by passengers, nor conflict in any degree with the general object and design of its construction, but rather tended to the promotion thereof.

It is argued, however, that in this case the plaintiffs are virtually seeking to recover toll for the passage of the water pipes across their bridge, and that as no toll is allowed therefor by their charter, the demand is unauthorized and illegal. To support this position the case of *Perrine vs. The Chesapeake and Delaware Canal Company,* 9 *Howard,* 172, has been referred to.

It was decided in that case, that as no power was given to the corporation to demand toll from the passengers on a vessel passing through the canal, that no such power could be exercised, and no such toll lawfully taken. The matter in contest in that case, was

FRANKFORT
BRIDGE Co.
*vs.*
CITY OF FRANK-
FORT.

charter of the Frankf't bridge company to prevent the company from contracting to permit the connecting of water pipes to the bridge, to convey water from one side to the other, nor does such permission interfere with the objects of the act of incorporation.

2. The bridge company had the right to prohibit the city from attaching water pipes to their bridge, and if permitted to do so, under an agreement either express or implied, to pay for the use of the bridge, there is a liability arising out of the contract, and not out of any assumed right to charge tolls.

FRANKFORT
BRIDGE CO.
*vs.*
CITY OF FRANK-
FORT.

the right of the corporation to demand toll where no toll was allowed by the charter. No question was made with respect to the validity of a contract to use the canal of the corporation in a particular manner, or for a particular purpose, nor did it appear that the canal had been used by the defendants with any understanding that they were to pay for it. It was therefore said by the court, in the opinion, that whether the " corporation might lawfully demand compen-'sation from a person *whom it permits* to pass over its 'property must depend upon the language of the 'charter, and not upon the rules of the common law.

In this case, however, toll is not demanded, nor is it pretended that if the defendants had been *permitted* by the company to use the bridge without any understanding that they were to pay for it, that any compensation for its use, in the nature of toll, could have been collected or demanded. But the company had a clear right to prevent the defendants from attaching their water pipes to the bridge, and if they were permitted to do it under an agreement, either express or implied, that they should pay for the use of the bridge; their liability arises out of their contract, and not out of any assumed right on the part of the company to charge them toll.

*Second.* The second question relates to the liability of a corporation upon an implied promise.

The old rule was that an implied assumpsit could not be maintained against a corporation, on the ground that such a body could contract only under the corporate seal. This rule, however, did not apply to acts and votes passed by such corporations at their corporate meetings; and the modern doctrine is that they may be bound by express promises, made by their authorized agents, or that promises may be implied from their acts, and the acts of their agents. *Lee vs Flemingsburg*, 7 *Dana* 28; *Commercial Bank of New Orleans vs Newport Manufacturing Company*, 1 *B. Monroe*, 14; 5, *B. Monroe*, 129; 2, *Kent's Com.* 233; *Angell and Aimes on Corporation*, section 238–241.

3. Corporations may be bound, by express promises made by their authorized agents, or promises implied from their acts, and the acts of their agents. 7 *Dana*, 28; 1 *B. Monroe*, 14; 5 *Ib.* 129; 2 *Kent's Com.*233; *Angell & Aimes on Corp.* 238—241.

.Although the testimony on the trial did not establish an express contract for the payment, by the defendants, of fifty dollars per year, yet, as it showed that the city council were informed they would be required to pay for the use of the bridge, and that they proceeded to use it with that knowledge, the inference arises that they agreed to pay either the sum named or such a sum as the use of it by them was reasonably worth. The court should therefore have permitted the plaintiffs to amend their petition, to have enabled them to recover on an implied promise if they failed to establish an express agreement.

Wherefore, the judgment is reversed, and cause remanded for a new trial and further proceedings consistent with this opinion.